[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 21-10242

Non-Argument Calendar

_____

PETERBROOKE FRANCHISING OF AMERICA, LLC,

                    Plaintiff-Counter Defendant-Appellee,

*versus*

MIAMI CHOCOLATES, LLC,
CHARLES MCDONALD,
JUDY MCDONALD,

                     Defendants-Counter Claimants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:16-cv-20417-MGC

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Miami Chocolates, LLC, Charles McDonald, and Judy McDonald appeal the district court's omnibus order granting in part and denying in part cross-motions for summary judgment in favor of Peterbrooke Franchising of America, LLC ("Peterbrooke of America"). After review of the parties' briefs and the record, we vacate and remand for further proceedings.[1]

## I

### A

On August 24, 2007, Miami Chocolates entered into a franchise agreement with franchisor Peterbrooke Franchising, Inc. ("Peterbrooke Franchising"), for a chocolate shop to be located in Coral Gables, Florida (the "Peterbrooke franchise"). In September of 2010, the McDonalds purchased Miami Chocolates and assumed the operation of the Peterbrooke franchise pursuant to the terms of the franchise agreement. At the time the McDonalds assumed the operation of the Peterbrooke franchise, the point-of-sale system ("POS system") in the shop was made by Iciniti Corp., which was then approved by Peterbrooke Franchising.

In January of 2012, Peterbrooke of America purchased Peterbrooke Franchising's rights and responsibilities under the

---

[1] Because we write for the parties, and assume their familiarity with the record, we set out only what is necessary to explain our decision.

21-10242               Opinion of the Court                        3

franchise agreement. It also obtained the "right to use the Peterbrooke trademarks worldwide to operate chocolate stores and to grant franchises and licenses to third parties to do the same." D.E. 202 at 4.

In the franchise agreement, Miami Chocolates had agreed that it would "procure and install [a POS system and necessary equipment] as [Peterbrooke of America] specif[ied]." D.E. 1-1 at 14. To that end, Miami Chocolates would "provide any assistance required by [Peterbrooke of America] to bring [the POS] system on-line with [its] system at the earliest possible time." *Id.* Miami Chocolates agreed that it understood "that it may become necessary for [it] to replace or upgrade the entire [POS] system with a larger system capable of assuming and discharging all the tasks and functions specified by [Peterbrooke of America]." *Id.* Peterbrooke of America was permitted to substantially modify the specifications and could have "require[d] installation of entirely different [POS] systems during the term of [the a]greement." *Id.* at 14–15. Finally, Miami Chocolates "agree[d] to install at [its] own expense such additions, changes, modifications, substitutions and/or replacements to [its] hardware, software, telephone lines, power lines and other related facilities" as directed by Peterbrooke of America and within its "sole and exclusive discretion." *Id.* at 15.

B

Between November 4, 2013, and October 14, 2015, Peterbrooke of America sent several letters to franchisees requiring them to upgrade and/or replace their stores' POS system—first to

the Micros E7 System, then to the Micros Symphony System, and finally to the NCR Silver/Simplebox System. The letters cited the applicable franchise agreement provisions that mandated the changes, and advised that failure to comply would result in enforcement of Peterbrooke of America's contractual rights. *See, e.g.,* D.E. 20-1.

Miami Chocolates objected to changing its POS system to each of the systems Peterbrooke of America requested. It asserted that the systems were not compliant with industry standards and would not be beneficial to the franchise.

Then, on January 1, 2016, Miami Chocolates implemented the Square POS system. Miami Chocolates refused to implement the new POS system required by Peterbrooke of America, stating that Peterbrooke of America had not tested the new system and that franchisees would not benefit from implementing it. Based on the failure of Miami Chocolates and the McDonalds to implement the new POS system, Peterbrooke of America terminated the franchise agreement.

Upon termination, the agreement required that the appellants stop using Peterbrooke of America's trademarks and remove all signage or other items that would "suggest[ ] or indicate[ ] a connection or association with [Peterbrooke]." D.E. 1-1 at 52–53. The appellants were required to remove "all distinctive physical and structural features associated with the [t]rade [d]ress of Peterbrooke Chocolatier Shops . . . to distinguish the [s]ite of the [s]hop so clearly from its former appearance and from other Peterbrooke

Chocolatier Shops as to prevent any . . . confusion created by such association." *Id.* at 53. The franchise agreement also included a non-compete provision prohibiting the appellants from directly or indirectly having any interest in a competing business within a 25-mile radius for a period of two years.

## C

Following their alleged noncompliance with the termination provisions of the franchise agreement, Peterbrooke of America filed suit against the appellants. It asserted Lanham Act infringement, Lanham Act false designations, common-law trademark infringement, common law unfair competition, and breach of the franchise agreement. Miami Chocolates and the McDonalds filed a counterclaim asserting breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Florida Deceptive and Unfair Trade Practices Act. They also submitted two requests for declaratory relief.

Eventually, both sides filed cross-motions for summary judgment. The district court entered an omnibus order granting both motions in part and denying them in part. The court granted Peterbrooke of America's motion for summary judgment on its counts for unfair competition and breach of the franchise agreement. And it granted summary judgment in favor of Peterbrooke of America on the appellants' counterclaim.

The district court concluded that, despite the appellants' contentions to the contrary, Peterbrooke of America had complied

with the terms of the franchise agreement in asking franchisees to implement the new POS systems. Thus, it held that Miami Chocolates and the McDonalds were not legally justified in their failure to comply with Peterbrooke of America's request that they implement a new POS system. The court also held that this failure constituted a material breach of the franchise agreement's terms, as required by Florida law.

Next, the district court concluded that the non-compete provision was enforceable because it was reasonable as to time, geographic limitation, and line of business, and because it protected a legitimate business interest. Given the appellants' breach of the non-compete provision by operating a competing business in the same location as the then-terminated Peterbrooke franchise, the court concluded that Peterbrooke of America suffered damages of $10,275.36 and was entitled to summary judgment on that claim.

The court then entered a final judgment consistent with its summary judgment order. This appeal followed.[2]

## II

### A

We review a grant of summary judgment *de novo*, "applying the same legal standards used by the district court." *Yarbrough*

---

[2] Only Miami Chocolates and the McDonalds have appealed the district court's orders. Peterbrooke of America has not filed any appeals on adverse rulings in connection with the underlying litigation.

*v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019) (internal quotations and citation omitted). We draw all facts and inferences in the light most favorable to the nonmoving party. *See Dyer v. Lee*, 488 F.3d 876, 878 (11th Cir. 2007). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## B

The appellants raise several arguments on appeal. First, they assert that the district court erred in granting summary judgment on the breach of contract claim because (1) Peterbrooke of America failed to establish that it had tested the new POS system and determined it would be beneficial to franchisees; and (2) Peterbrooke of America failed to establish that the failure to implement the new POS system was a "material" breach of the franchise agreement. Second, they contend the court erred in granting summary judgment for Peterbrooke of America on its unfair competition claim because it failed to establish that they had materially breached the franchise agreement. Third, they argue that the district court erred in granting summary judgment on their counterclaim because Peterbrooke of America wrongfully terminated the franchise agreement over their refusal to implement the new POS system.

The appellants largely rely on § 4.6.4 of the franchise agreement, which states: "Following [Peterbrooke of America's] testing and determination that it will prove beneficial to [Miami Chocolates], [Miami Chocolates] agree[s] to install at [its] own expense

such additions, changes, modifications, substitutions and/or replacements to [the POS system]." D.E. 1-1 at 15. Based on this provision, the appellants argue that they were not required to implement the new POS system, as requested, because Peterbrooke of America failed to perform the contractually-required testing of the system to be implemented.

Peterbrooke of America responds that the district court properly granted summary judgment on its breach of contract claim because the franchise agreement clearly "required [the a]ppellants to comply with" its specifications for installation of the new POS system. Appellee's Br. at 2. The appellants failed to comply when they refused to install the new POS system, and failed show any bad faith on the part of Peterbrooke of America.

### III

### A

"Under ordinary principles of contract interpretation, a court must first examine the natural and plain meaning of a [contract's] language." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548–49 (11th Cir. 1996). The plain language of the franchise agreement grants Peterbrooke of America broad and full discretion in determining whether a new POS system is appropriate and/or beneficial to the franchises. *See* D.E. 1-1 at 14–15. The franchise agreement states that, when instructed to do so by Peterbrooke of America, the appellants were required to procure and install a POS system as specified by Peterbrooke of America. *See id.* at 14. The franchise

agreement further states that Peterbrooke of America could require the appellants to replace or upgrade the entire POS system to its specifications. *See id.* at 14–15. The appellants were to bear the costs of any additions, substitutions, or replacements of the POS system. *See id.* at 15. All of these provisions indicate that Peterbrooke of America acted permissibly in asking the appellants to update and change the franchise's POS system.

The appellants contend that the "testing" referenced in § 4.6.4 of the franchise agreement constituted a condition precedent with which Peterbrooke of America was required to comply before there could be a breach of a contractual duty. *See* Appellant's Br. at 11. Nothing in the franchise agreement, however, conditions the implementation of a new POS system on any specific type or amount of testing by Peterbrooke of America prior to implementation.

In our view, § 4.6.4 of the franchise agreement does not lend support for the appellants' arguments. Nor does any other provision. Reading the contractual provisions together, Peterbrooke of America had the full and exclusive discretion to designate and change the POS system franchisees were required to implement. Additionally, as noted by the district court, "nothing in the [franchise a]greement required [Peterbrooke of America] to share the details of its testing, analysis, and selection process with [the appellants]." D.E. 202 at 10.

Assuming that Peterbrooke of America was required to perform some testing, *see* D.E. 1-1 at 15, it put forth undisputed

evidence that it had done so. *See* D.E. 8 at 16 (affidavit of Peterbrooke of America's Chief Operating Officer explaining the testing carried out on the new POS system before asking franchisees to implement that same system). And, as stated, nothing in the franchise agreement required any particular level or type of testing.

The appellants do not point to any other provision of the agreement that dictates the amount of testing or any evidence that would show that Peterbrooke of America failed to test the new POS system. Thus, the district court properly concluded that the appellants breached their duty under the franchise agreement by refusing to implement the POS systems required by Peterbrooke of America. The remaining question is whether that breach was material.

## B

Under Florida law, "the materiality of a breach is relevant when a party seeks to terminate or rescind a contractual relationship." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1490 (11th Cir. 1983). Termination is only proper where the nonperforming party has breached a material term because an immaterial breach does not excuse continued performance. *See id.* "To constitute a vital or material breach, a party's nonperformance must 'go to the essence of the contract.'" *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 849 (11th Cir. 2013) (quoting *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. Dist. Ct. App. 1972)). "A party's 'failure to perform some minor part of his contractual

21-10242               Opinion of the Court                        11

duty cannot be classified as a material or vital breach.'" *Id.* (quoting *Beefy Trail*, 267 So. 2d at 857).

After considering the parties' arguments, we conclude that genuine issues of material fact remain as to whether the appellants' breach of the franchise agreement concerning their obligation to implement the required POS systems was material such that summary judgment was inappropriate on this record. Generally, whether an alleged breach is material under Florida law is a question of fact. *See, e.g., Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. Dist. Ct. App. 2008) ("The issue of whether an alleged breach is vital or material is reviewed as a question of fact."); *Moore v. Chodorow*, 925 So. 2d 457, 461 (Fla. Dist. Ct. App. 2006) ("Whether a party's failure to commit certain actions constitutes a material breach of an agreement is reviewed as a question of fact."). And taking the facts in the light most favorable to the appellants (as we must), Peterbrooke of America has not shown, as a factual matter, that Miami Chocolates' failure to migrate to the NCR Silver/Simplebox POS system was material to the franchise relationship.

To begin with, where parties use different language in different provisions of a contract, courts presume that those provisions have different meanings. *See Aleman v. Gervas*, 314 So. 3d 350, 352 (Fla. Dist. Ct. App. 2020) ("[T]he use of different language in different contractual provisions strongly implies that a different meaning was intended." (citation omitted)); *Nat'l R.R. Pass. Corp. (Amtrak) v. Rountree Trans. & Rigging, Inc.*, 422 F.3d 1275, 1284

(11th Cir. 2005) (explaining that "[e]very provision in a contract should be given meaning and effect to avoid rendering any provision mere surplusage" (internal quotation marks and citation omitted)). *See also Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156–57 (10th Cir. 2007) ("When a contract uses different language in proximate and similar provisions, we commonly understand the provisions to illuminate one another and assume that the parties' use of different language was intended to convey different meanings."). The franchise agreement, which deals with the POS system in § 4.6, is silent as to the materiality of Miami Chocolates' obligations as to the implementation of POS systems. As the appellants note, numerous provisions of the franchise agreement explicitly state that compliance with certain terms is material. *See, e.g.*, D.E. 1-1 at 18 ("Any unauthorized use of the Marks by You shall constitute a material breach of this Agreement . . . ."); *id.* at 22 ("Failure to procure execution of a Confidentiality and Non-Competition Agreement shall be a material breach of this Agreement."). No such language, however, appears in § 4.6 of the franchise agreement. Although Peterbrooke of America responds—without citation to authority—that this fact "does not take away from the materiality of Miami Chocolates' obligations to install the new POS system," Appellee's Br. at 6, this difference in language amongst different provisions of the franchise agreement suggests that the parties agreed that the failure to comply with POS system requirements was not necessarily material.

Beyond the difference of language in the franchise agreement, other evidence in the record demonstrates that genuine issues of material fact remain as to the materiality of the breach here. For example, one of Peterbrooke of America's corporate representatives, Jeffrey Smith, testified that the company permitted franchisees who had purchased a prior POS system to keep that system and not convert to the new system "until they had it depreciated or had paid off their equipment leases." D.E. 139-1 at 9. Mr. Smith also testified that at least half of the Peterbrooke franchises were permitted to continue operating on a POS system other than NCR Silver at the time when Miami Chocolates' agreement was terminated for refusing to upgrade their POS system. *See* D.E. 163-6 at 77. This indicates that franchises could, in fact, operate on different POS systems, meaning that the POS system may not be a term essential to the franchise agreement. And Peterbrooke of America has not provided evidence demonstrating that its franchisees were not being permitted to continue using other POS systems in those situations.

Further, Miami Chocolates provided affidavits stating that their Square POS system has at least the same functionality with respect to reporting and monitoring of sales as the systems required by Peterbrooke of America—something which Peterbrooke of America did not contest. And it gave Peterbrooke of America the username and password to access Miami Chocolates' weekly sales activities on the Square POS system. *See* D.E. 21-1 at ¶ 14. There is no evidence in the record that Peterbrooke of America was

14                      Opinion of the Court                      21-10242

denied access to this information or that Miami Chocolates failed to make any payments to it. *See id.* at ¶ 13.

Given that other franchises were using different POS systems at the time Peterbrooke of America terminated Miami Chocolates' franchise agreement, that their Square system had the same functionalities, and that they gave Peterbrooke of America full access to their sales information, genuine issues of material fact remain as to whether the breach was material. Summary judgment on Peterbrooke of America's breach of contract claim was therefore inappropriate.[3]

Because we vacate the grant of summary judgment on Peterbrooke of America's breach of contract claim, we also vacate the district court's grant of summary judgment on the unfair competition claim. The court's ruling in favor of Peterbrooke of America on that latter claim was based upon the appellants' "continued use of [its] phone numbers, social media pages, and the [Peterbrooke franchise] location after termination of the [f]ranchise [a]greement." D.E. 202 at 17. Unless Miami Chocolates' breach of the franchise agreement was material, Peterbrooke of America would not have been justified in its termination of that agreement—a fact that formed the basis for its unfair competition claim. Further,

---

[3] We recognize that Peterbrooke of America first requested that Miami Chocolates change its POS system in 2013 and that Miami Chocolates unilaterally changed its system to the Square system in 2016. We express no view as to how these facts play out in the materiality calculus.

because issues of fact remain as to the materiality of Miami Chocolates' breach, the court could not have properly concluded that Peterbrooke of America was entitled to summary judgment in its favor on the appellants' counterclaim for breach of contract.

## V

We vacate the district court's grant of summary judgment in favor of Peterbrooke of America on its claims for breach of contract and unfair competition, and on the appellants' counterclaim for breach of contract, and remand for further proceedings.

**VACATED and REMANDED.**